450 A.2d 80

**Appeal of G. J. A.**

Superior Court of Pennsylvania.

Argued June 23, 1981.

Filed Sept. 3, 1982.

22

Richard E. Moose, West Chester, for appellant.

John H. Wollman, West Chester, for participating party.

Before HESTER, CAVANAUGH and DiSALLE, JJ.

CAVANAUGH, Judge:

This appeal is taken from an order terminating the parental rights of appellant G. J. A. with respect to his son Eric A. For the reasons discussed below, we vacate the order and remand the case to the lower court for reconsideration in light of a recent decision by The United States Supreme Court.

The petition requesting that appellant's rights be terminated was filed by Eric's mother and step-father, appellees

herein. The lower court terminated appellant's parental rights after finding that appellant had, for a period of at least six months, failed to perform parental duties under section 311(1) of the Adoption Act, 1 P.S. § 311(1).[1] Under that section, parental rights may be terminated if:

> The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties . . . .

The evidence presented to the lower court establishes that Eric was born May 24, 1969. His parents were divorced in January 1972, and Eric has resided continuously with his mother since that time. For the first few years following the divorce, appellant apparently visited Eric on a fairly regular basis. In the summer of 1975, Eric moved to Chester County, Pennsylvania, with his mother and her second husband. Appellant continued to reside in Tennessee, where the parties lived before their divorce. Since Eric moved to Pennsylvania, he has seen his father only three times; once in 1975, once in the fall of 1976, and once in August, 1977, when Eric traveled to Tennessee and stayed with appellant and his new family for one week. That visit was apparently unsuccessful and Eric has refused since then to return to Tennessee to visit appellant despite the fact that appellant has on more than one occasion provided a round-trip airplane ticket for such a visit. Since August of 1977, appellant's only contact with his son has been through cards and phone calls at Christmas and on Eric's birthday. Appellant made support payments for several years but, due to a severe financial setback, he has not made a payment since the middle of October, 1979. The instant petition was filed April 30, 1980, six months after appellant stopped making payments.

With regard to the parental duties under section 311(1), the Pennsylvania Supreme Court stated in *In re Adoption of*

[1]. The current version of the Adoption Act is found at 23 Pa.C.S.A. § 2101 *et seq.* Specifically, the standard for involuntarily terminating parental rights which is relevant to this case is found at 23 Pa.C.S.A. § 2511(a)(1).

24

*F. D. S. and G. M. S.,* 490 Pa. 43, 46–47, 415 A.2d 23, 25 (1980):

> [W]e have repeatedly held that, for the purposes of this section, "the parental obligation is a positive duty which requires affirmative performance. . . . [citations omitted] . . . . This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child . . . . [citations omitted] . . . . Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life." *In re Involuntary Termination of Parental Rights of S. C. B. and K. T.,* 474 Pa. 615, 624, 379 A.2d 535, 540 (1977).

The issue in the instant case is whether appellant did enough to satisfy this affirmative duty.

█ The lower court felt that this case was controlled by the Pennsylvania Supreme Court's holding in *In The Matter of The Adoption of David C.,* 479 Pa. 1, 387 A.2d 804 (1978). That case also involved the termination of parental rights of a father who had lived a considerable distance from his son for several years and who had made few efforts to visit with his son during that time. The lower court in the instant case admitted that "there is perhaps more to be said on behalf of the father here as concerns his attempts to perform his parental duties" than in *David C.,* but stated that it was "nevertheless of the opinion that this situation is controlled by the holding of *David C.,* on the basis of the reasoning of that decision." (Lower court opinion at 5). The court in *David C.,* emphasizing the parent's duty to take affirmative steps to maintain a relationship with their child, stated that "An absent parent must make special efforts to overcome the gaps created by geographic separation." 479 Pa. at 15, 387 A.2d at 811. The lower court in the instant case found that appellant had made only a "perfunctory effort" to perform his parental duties and that this was not enough to satisfy the requirements set forth in *David C.*

We believe, however, that due to a recent decision of the United States Supreme Court, *David C.* is no longer controlling law in Pennsylvania. In *David C.,* the Pennsylvania Supreme Court stated that the party attempting to terminate the father's rights had "clearly met her burden of establishing *by a preponderance of the evidence* that for a period of at least six months, [the father] 'has refused or failed to perform parental duties' within the meaning of section 311(1) of the [Adoption Act]." 479 Pa. at 13, 387 A.2d at 810. (emphasis added). The United States Supreme Court recently struck down a New York law permitting the state to terminate the rights of parents in their natural child upon showing by a "fair preponderance of the evidence" that the child was "permanently neglected." *Santosky v. Kramer, Commissioner, Ulster County Department of Social Services, et al.,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The Supreme Court held that the Due Process Clause of the Fourteenth Amendment required that: "Before a state may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations *by at least clear and convincing evidence.*" 455 U.S. at 746, 102 S.Ct. at 1391, 71 L.Ed.2d at 603. (emphasis added). Since the Pennsylvania statute providing for termination of parental rights does have the effect of severing "completely and irrevocably" the rights of parents in their natural child, our courts are bound by the holding in *Santosky.*[2]

Henceforth, any party in Pennsylvania attempting to terminate parental rights must establish by clear and convincing evidence the existence of grounds for doing so.[3] It

**2.** There can be no doubt that the holding in *Santosky* applies to cases such as the instant one which were tried before *Santosky* but in which an appeal was pending at the time of the *Santosky* decision. As the Pennsylvania Supreme Court recently stated, "a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur before the judgment becomes final." *Commonwealth v. Brown,* 494 Pa. 380, 431 A.2d 905, 907 (1981). *See also Commonwealth v. Hastings,* 301 Pa.Super. 65, 446 A.2d 1337 (1982).

**3.** Under Pennsylvania law, a petition to terminate parental rights may be filed by an agency, by a parent seeking to terminate the

would follow therefore, that any Pennsylvania cases holding otherwise are no longer authority as to the standard of proof required in termination of parental rights cases.[4]

■ As a matter of policy we cannot disagree with the establishment of a stricter standard of proof in termination of parental rights cases. To the contrary, it can be soundly argued that the standards for involuntarily terminating parental rights heretofore established by Pennsylvania statutory and case law were unduly harsh in that they too easily allowed a legal termination of the closest of blood relationships, that of parent and child, a bond that the law should not hasten to sever as a punishment for repented human frailty. The new "clear and convincing evidence" requirement reflects society's interest in the preservation of close family relationships and will mean that parental rights will not be terminated in borderline cases.

rights of the other parent, or by a person having custody or standing in loco parentis to the child and who intends to adopt the child. 23 Pa.C.S.A. § 2512. The grounds for involuntary termination and, likewise, the burden of proof required to establish the existence of those grounds, are the same whether the petition is brought by a state agency or by a private party. It is irrelevant, therefore, that the petition was filed by a state agency in the *Santosky* case and by a private party in the instant case and in *David C.*

4. It is interesting to note that in a footnote in *Santosky,* The Supreme Court lists Pennsylvania as one of sixteen states which has, by court decision, required clear and convincing evidence or its equivalent. 455 U.S. at 749–750 n. 3, 102 S.Ct. at 1392 n. 3, 71 L.Ed.2d at 604 n. 3. The case cited by The Supreme Court only states that:

When the child is in the home, this ongoing relationship will not be disturbed except upon a showing by clear and convincing evidence that removal is "clearly necessary."

*In re William L.,* 447 Pa. 322, 332, 383 A.2d 1228, 1233, *cert. denied,* 439 U.S. 880, 99 S.Ct. 216, 58 L.Ed.2d 192 (1978) (citations omitted). The case can not be read to require clear and convincing evidence in all termination of parental rights cases. In fact, in several Pennsylvania Supreme Court cases decided subsequent to William L., a "preponderance of the evidence" standard was used in determining whether grounds for involuntary termination of parental rights existed. *See, e.g., In re Adoption of M. M.,* 492 Pa. 457, 424 A.2d 1280 (1981); *In re Adoption of J. S. M., Jr.,* 492 Pa. 313, 424 A.2d 878 (1981); *In The Interest of T. S. L.,* 487 Pa. 245, 409 A.2d 332 (1979); *In re D. J. Y.,* 487 Pa. 125, 408 A.2d 1387 (1979).

The lower court in the instant case stated that it was called upon "to decide a particularly close question" and that it was "with some reluctance" that it concluded that appellant's rights should be terminated. (Lower court opinion at 1). Since this conclusion was based largely on the holding of *David C.,* in which only a preponderance of the evidence was required, we must remand this case to the lower court with instructions to reconsider the case in light of the recent Supreme Court holding that parental rights can be terminated only upon the presentation of clear and convincing evidence that grounds for termination exist.[5]

Order vacated. Case remanded for reconsideration in accordance with this opinion.

DiSALLE, J., did not participate in the consideration or decision of this case.

---

**5.** We are aware of the fact that another panel of this court recently declined to remand a case for reconsideration in light of *Santosky.* Instead, it engaged in an independent review of the record and determined that the evidence presented to the lower court was sufficient to warrant termination of parental rights even under the "clear and convincing evidence" requirement of *Santosky. In re Adoption of M. E. T.,* —— Pa.Super. ——, slip opinion, No. 415 Pittsburgh 1981 (Pa.Super., filed June 25, 1982). We feel that it is a better practice to remand the case so that the trier-of-fact, who had an opportunity to observe the witnesses and their demeanor, can re-evaluate the evidence in light of the new evidentiary standard.