473 A.2d 1089

**In the Matter of the ADOPTION OF Henry Augustus HUTCHINS, IV.**

**Appeal of Henry Augustus HUTCHINS, III.**

Superior Court of Pennsylvania.

Argued Sept. 27, 1983.

Filed March 30, 1984.

Petition for Allowance of Appeal Granted July 16, 1984.

---

James Andrew Pitonyak, Erie, for appellant.

Stephanie Domitrovich, Erie, for appellee.

Marilyn Woolery, Erie, for participating party.

Before BROSKY, McEWEN and BECK, JJ.

BECK, Judge:

The appellant-natural father (father) appeals an order granting the petition of the appellee-natural mother (mother) for the involuntary termination of the father's parental rights to the parties' son. We affirm.

The parties' son was born on December 8, 1973. Although the parties never married, they sporadically resided together until the summer of 1977. On September 21, 1982, the mother filed a petition to terminate the father's parental rights. Pursuant to the mother's petition, a hearing was held on December 1, 1982, in the Orphans' Court of Erie County. As a result of the testimony presented at the hearing, the court issued a decree terminating the father's parental rights under Section 2511(a)(1) of the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1). Thereafter, the father filed timely exceptions to the court's decree. After the father's exceptions were dismissed and a final decree terminating his parental rights was entered, the father duly filed a

notice of appeal questioning solely whether the court's termination order was based upon clear and convincing evidence.

■■■ In accordance with the dictates of *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), "any party in Pennsylvania attempting to terminate parental rights must establish by clear and convincing evidence the existence of grounds for doing so." *Appeal of G.J.A.,* 304 Pa.Super.Ct. 21, 25, 450 A.2d 80, 82 (1982) (footnote deleted). Moreover, a termination order must rest upon competent evidence and cannot be " 'predicated upon capricious disbelief of competent and credible evidence.' "[1] *In re Adoption of Barnett,* 304 Pa.Super.Ct. 514, 521, 450 A.2d 1356, 1360 (1982) (citation omitted); *In re Adoption of M.M.,* 492 Pa. 457, 424 A.2d 1280 (1981). Consequently, in reviewing a challenged termination order, we must ascertain whether the order is supported by clear and convincing, competent evidence.

"[P]arental obligation is a positive duty which requires affirmative performance ... [including] a genuine effort to maintain communication and association with the child .... [P]arental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life.' " *In re Adoption of R.W.G.,* 494 Pa. 311, 314–15, 431 A.2d 274, 276 (1981) (citation omitted). Where a "parent by conduct continuing for a period of at least six months ... has ... failed to perform parental duties," Section 2511(a)(1) of the Adoption Act authorizes the involuntary termination of parental rights.

**1.** " 'While we will not usurp the trial court's right to assess the credibility of the witnesses appearing before him, we will not condone his ignoring facts which are of record and the credibility of which is not challenged.' " *In re Adoption of Barnett,* 304 Pa.Super.Ct. 514, 521, 450 A.2d 1356, 1360 (1982) (citation omitted). We recognize that the issue of the scope of review to be applied in involuntary termination of parental rights cases is presently before our en banc court in the case of *In re James J.,* No. 2776 Philadelphia, 1981, argued February 11, 1983; however, under either a broad or a narrow scope of review, the result in this case would be the same.

At the court hearing on the termination petition, both the mother and the father testified that since October of 1977 the father has had no personal contact with their son. Record at 16, 45–48. Additionally, the father admitted that since 1977 he has neither offered financial support for his son's care, Record at 60–61, nor attempted communication with his son by telephone or letter. Record at 48 and 57.

The only unrebutted evidence indicating the father's active interest in his son during the period from October of 1977 to September of 1982 (the date on which the termination petition was filed) is the mother's statement that in 1978 the father sent their son an Easter basket and at Christmas in 1979 the father sent their son a toy gun set. Record at 7, 10.[2] However, in a case where over a span of seven and one-half years a father had only occasionally sent his son Christmas and birthday cards and had not otherwise tried to establish contacts with his son, the Pennsylvania Supreme Court held that the father's actions did not constitute "the sort of effort that a parent who wants to maintain a place of importance in a child's life would make in order to ensure his ability to see the child and protect his parental rights." *In re Adoption of David C.*, 479 Pa. 1, 11, 387 A.2d 804, 809 (1978); *In re Adoption of Oehler*, 267 Pa.Super.Ct. 586, 407 A.2d 397 (1979).

 Therefore, we hold that the record contains clear and convincing, competent evidence of the father's failure to perform parental duties for a period well in excess of the six-month statutory limit. But this determination does not end our inquiry because a failure to perform parental obligations does not automatically warrant an involuntary termination of parental rights. *In re Adoption of J.A.B.*, 487 Pa. 79, 408 A.2d 1363 (1979). Rather, the nonperformance of parental duties must be evaluated under the totality of the circumstances confronting the particular parent

2. The father delivered the Easter basket and toy gun set to the home of his son's maternal grandmother who then forwarded the gifts to the parties' son. Therefore, the presentation of these two gifts did not occasion any personal contact between the father and his son.

whose rights are jeopardized, and consideration must be afforded to any excuses proffered to explain the nonperformance. *In re D.J.Y.*, 487 Pa. 125, 408 A.2d 1387 (1979); *In re Adoption of J.S.H.*, 299 Pa.Super.Ct. 90, 445 A.2d 162 (1982). "A parent's performance must be measured in light of 'what would be expected of an individual in circumstances in which the parent under examination finds himself.'" *In re Adoption of B.D.S.*, 494 Pa. 171, 179, 431 A.2d 203, 207 (1981) (citation omitted).

In the case sub judice the father asserts that his lack of significant contacts with his son stemmed from the mother's deliberate actions to thwart any such intercommunication. Uncontroverted evidence of record establishes that (1) from the time of the parties' separation in 1977 until the September 21, 1982, filing of the termination petition, the mother changed residences five times, Record at 5, 8, 10, 11, 13; (2) in the latter part of 1980 the mother's telephone number became unlisted and remained unlisted as of the filing of the termination petition, Record at 12, 24, and (3) the mother would not have voluntarily permitted the father to visit their son, Record at 23.

Nevertheless, "[i]t is clear ... that to safeguard his or her parental rights, a parent may not acquiesce in obstructive behavior by ... the custodial parent. He or she must exhibit 'reasonable firmness' in refusing to yield to such obstacles." *In re Adoption of J.S.H.*, 299 Pa.Super. at 102, 445 A.2d at 168 (Beck, J., concurring); *In re Adoption of J.S.M., Jr.*, 492 Pa. 313, 424 A.2d 878 (1981); *In re D.J.Y.* In this regard the following uncontested facts appear of record. After the parties' separation in 1977, the mother and the parties' son moved to the home of the mother's mother (grandmother). Record at 26. In January of 1978 the mother and the parties' son obtained a separate residence. Record at 8. The mother testified that her new address and telephone number were listed in the telephone directory under her maiden name. Record at 8. In 1979 the mother and the parties' son moved to a home shared by the mother's present husband whose name was known to

the father. Record at 10, 67–68. The mother's new address and telephone number were again listed in the telephone directory under the mother's maiden name. Record at 10, 12. The father admitted that he never consulted the telephone directory in an effort to locate and communicate with his son. Record at 64. Thus, despite the availability of the mother's addresses and telephone numbers upon perusal of the telephone directory, the father never attempted to telephone, write, or visit his son from 1978 to 1980. Record at 8–12.

Additionally, the father admitted knowing that his niece and his son were in the same school class in 1979. Record at 10, 62. Yet, the father stated that he never asked his son's teacher for any information about his son. Record at 64.

In the latter part of 1980 the mother, the parties' son, and the mother's present husband relocated and acquired an unlisted telephone number to avoid obscene telephone calls which they had started receiving from an undiscovered source. Record at 28, 44. Nevertheless, the location of the parties' son was readily discernible through minimal inquiries. From the time of the parties' separation in 1977 until October of 1982, the grandmother lived at one locale which the father visited at least twice after the parties' separation in order to deliver an Easter basket and a toy gun set to be forwarded to his son. The father and the grandmother also testified that while doing their respective errands, they occasionally chanced to meet each other and talk. Record at 29, 52. However, the father stated that he never asked the grandmother for the mother's address. Record at 49.

■ Given the circumstances of this case, we further hold that the record contains clear and convincing, competent evidence of the father's failure to utilize the resources available to him to persist in attempting to overcome the relatively minimal impediments to the development of a parent-child relationship with his son. *In re Adoption of B.D.S.; In re D.J.Y.*

Accordingly, we affirm the order of the Orphans' Court Division of the Court of Common Pleas of Erie County.