J-A07029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF R. H. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.M. NATURAL MOTHER | No. 1780 WDA 2014 |

Appeal from the Order October 24, 2014
In the Court of Common Pleas of Beaver County
Orphans' Court at No(s): 3015-2014

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUNDY, J.

MEMORANDUM BY LAZARUS, J.:                **FILED APRIL 8, 2015**

R.M. (Mother) appeals from the trial court's order denying her petition to involuntarily terminate J.H.'s (Father) parental rights to their minor daughter, R.H. (Child) (born November 2006).  After careful review, we reverse and remand for further proceedings.

<u>FACTS</u>

Mother and Father were never married; the parties ended their relationship in 2007.  At the time of Child's birth, Child resided with Mother and Father at Maternal Great-Grandmother's home in Raccoon Township.  In December 2006, Mother, Father and Child moved to a friend's apartment in Hopewell.  In the summer of 2007, Mother, Father and Child lived with Maternal Grandmother and, later that year, resided with Paternal Grandmother and Maternal Grandfather for brief periods of time.

Subsequently, the couple and Child lived in Father's apartment for three months in the fall of 2007. From November 2007 to the spring of 2008, Mother and Child moved into Maternal Grandfather's home. In the spring of 2008, Mother and Child moved into Mother's then-boyfriend's (now current husband/Stepfather) parent's home in Aliquippa. In 2009, Mother, Child and Stepfather moved to their current residence in Aliquippa; they briefly returned to live with Stepfather's parents in 2012, and then returned to live in their current residence in 2013.

Following their split in 2007, Mother and Father had an informal arrangement whereby Father watched Child three times a week when Mother worked. Eventually, Father failed to abide by the schedule, showing up late to pick Child up or failing to pick Child up at all on the agreed upon days. Father sporadically visited with Child until October 2008. Mother testified that due to Father's unreliability, she frequently "decline[d] [Father's requests to visit Child]." N.T. Termination Hearing, 7/22/14, at 28. Mother also testified that until 2008, Father maintained sporadic telephone contact with Child. *Id.* at 50. Father's last direct contact with Child was in early 2010, when Child was 3½ years old.

In 2011, Father filed for custody of Child. He failed to appear at the first two scheduled custody hearings.[1] After Father showed up unannounced at Mother's home in 2012 to see Child, Mother filed a petition for a protection from abuse (PFA) order. In October 2012, the court granted Mother's petition and entered a PFA order against Father to protect Mother; the PFA order expired in October 2013. Father has not attended any of Child's school events or contacted the school to inquire how she is doing. He has not sent her any gifts or letters since the spring of 2010.

On April 3, 2014, Mother[2] filed the underlying termination petition[3] against Father claiming that termination of his parental rights is proper pursuant to 23 Pa.C.S. §§ 2511(a)(1) and (a)(2) of the Adoption Act.[4] In June and July 2014, Child's Guardian Ad Litem (GAL) interviewed Child, Mother, Stepfather, and Father in order to prepare his report and

---

[1] A current child support order from the Beaver County Domestic Relations Office has been in effect regarding Child since 2007. At the time of the termination hearing, Father was $3,400 in arrears.

[2] *See* 23 Pa.C.S. § 2512(a)(1) ("A petition to terminate parental rights with respect to a child under the age of 18 years may be filed by . . . [e]ither parent when termination is sought with respect to the other parent.").

[3] Mother also alleged in her termination petition that her current husband, Stepfather, will be filing a petition to adopt Child. *See* 23 Pa.C.S. § 2512 (petition to involuntarily terminate a natural parent's rights filed by individual (as opposed to agency) is only cognizable when it is accompanied by prospective stepparent's intention to adopt child).

[4] 23 Pa.C.S. §§ 2101-2938.

recommendation regarding termination of Father's parental rights. In his recommendation, the GAL states that "it has been approximately four years since [Father's] last meaningful contact with [Child]" and that "[F]ather could not give a reason for why he did not pursue a child custody agreement." GAL Recommendation, 7/31/14, at 2. The GAL also noted that Father admitted to being "clean" since August 2013, *id.* at 3, and that there was testimony that Father had paid some child support. *Id.* at 5. Finally, the GAL noted that there was testimony that Mother had put in place "alleged barriers . . . in regards to minor child." *Id.* The GAL's final recommendation concluded that the statutory grounds to terminate Father's parental rights exist under sections 2511(a)(1) and (b), where:

> In the present case, [F]ather did not show up for the custody conferences on two occasions despite filing for custody and other than the testimony that [F]ather sent an Easter Basket there was no testimony that [F]ather sent any cards, other presents, etc. to the minor child. Father gave emotional testimony that he loves his daughter and the undersigned does not call into question that testimony. However, the lack of testimonial evidence of a bond is controlling in regards to the case law of the lack of bond in the present case.

*Id.* at 6.

The trial court held a termination hearing on July 22, 2014, at which Father, Mother, Stepfather, Paternal Aunt, Paternal Grandmother, and Maternal Great-Grandmother testified. On October 24, 2014, the trial court entered an order denying Mother's petition to terminate Father's parental rights. In its Rule 1925(a) opinion, the trial court supports its decision, stating:

Father's attempts to maintain a relationship and Mother's barriers to the same are sufficient to deny termination pursuant to 23 Pa.C.S. § 2511(a)(1).

\* \* \*

Father acknowledged his drug addiction and his numerous mistakes in the past but credibly testified that his lifestyle has since become suitable for parenting: he has been drug-free for over one year and regularly attends NA meetings, he has full-time employment and resides in his own apartment with two bedrooms. Father further provided emotional testimony as to his desire to resume a relationship with [Child].

As such, the Court finds that the Mother has failed to prove that termination is appropriate under 23 Pa.C.S. § 2511(a)(2).

Trial Court Opinion, 11/25/14, at 14-15. This appeal follows.

On appeal, Mother presents the following issues for our consideration:

(1) Whether the trial court erred as a matter of law and abused its discretion in failing to terminate the parental rights of Father under 23 Pa.C.S. § 2511(a)(1) after determining that Father had not had contact with the minor child since October of 2009 and that there was no bond between Father and the minor child but erroneously finding that Mother erected insurmountable barriers to Father's relationship with the minor child and that Father exhibited reasonable firmness in maintaining his relationship with the minor child and used all available resources to preserve the parental relationship.

(2) Whether the trial court erred and abused its discretion in failing to terminate the parental rights of Father under 23 Pa.C.S. § 2511(a)(2) after finding that Father had a history of drug addiction.

(3) Whether the trial court erred and abused its discretion in failing to find that the needs and welfare of the minor child would best be served by the termination of parental rights in light of the evidence and the recommendation of the Guardian ad Litem.

DISCUSSION

Termination under Section 2511(a)

Mother contends that the trial court improperly denied her petition to terminate Father's parental rights where she established by clear and convincing evidence that: (1) Father has not performed his parental duties for a period of six months prior to the filing of her termination petition; and/or (2) Father was incapable of performing his parental duties due to his history of drug addiction.

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish **by clear and convincing evidence** the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "**clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue**." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (emphasis added) (citation omitted).

Moreover, we review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. *Id.* The Superior Court must affirm the decision of the trial court where competent evidence exists to support its conclusion, even if the

record could support a finding to terminate. ***In re Adoption of Atencio***, 650 A.2d 1064 (Pa. 1994).

A court may terminate parental rights under section 2511(a)(1) where the parent demonstrates a settled purpose to relinquish parental claim to a child or fails to perform parental duties for at least the six months prior to the filing of the termination petition. Under a section 2511(a)(1) analysis

> the court should consider the entire background of the case and not simply mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his . . . parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

***In re Z.P.***, 994 A.2d 1108, 1117 (Pa. Super. 2010) (citation and quotation omitted).

Instantly, the trial court concluded that Mother historically created barriers and/or thwarted the relationship between child and Father. Specifically, evidence showed that Mother refused to allow Father to have contact with Child since 2008, when Father was struggling with substance abuse and was unreliable in abiding by the terms of the parties' agreed upon custody arrangement.

Father testified that his last visitation with Child was in early 2010. After that date, Father talked to Child on the phone often for another five to six months until Mother changed her phone number. N.T. Termination Hearing, 7/22/14, at 127. Father testified that he stopped by Mother's

home a "couple of times" during the summer of 2010 and was told to leave by Mother and her new husband. *Id.* at 128. Father also testified that he delivered an Easter basket for Child to Maternal Grandmother's home in the Spring of 2011. Father testified that he pays child support, but is currently $3,400 in arrears. Finally, Father filed for custody of Child in 2011, but failed to attend two scheduled custody conferences relating to his custody petition.

With regard to his personal life, Father testified at the termination hearing that he had been living in a two-bedroom apartment for the past three months, has been drug (heroin) free since August 2013,[5] had successfully completed drug rehabilitation treatment, attends Narcotics Anonymous meetings weekly, and has been employed on and off as a mechanic and tire technician for the past 5 years. N.T. Termination Hearing, 7/22/14, at 119, 126, 149. The court also heard Father's emotional testimony that he desires to reunite with his daughter. *Id.* at 134.

It is well established that:

> Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, that court has held that the parental obligation is a positive duty that requires affirmative performance. This affirmative duty encompasses more than a financial obligation; **it requires**

_____

[5] Father admitted that he did have alcohol in March 2014 – four months before the termination hearing. N.T. Termination Hearing, 7/2/14, at 149.

> **continuing interest in the child and a genuine effort to maintain communication and association with the child.** Because a child needs more than a benefactor, **parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.**

*In re N.M.B.*, 856 A.2d 847, 855 (Pa. Super. 2004) (emphasis added).

It is undisputed that a large part of Father's failure to affirmatively perform his parental duties to Child for over four years is attributable to his drug dependency. However, the trial court also largely blamed Father's lack of involvement in Child's life on Mother's willful and intentional acts to bar Father from contacting Child. Our Court has stated that:

> Where a non-custodial parent is facing termination of his or her parental rights, **the court must consider the non-custodial parent's explanation, if any, for the apparent neglect, including situations in which a custodial parent has deliberately created obstacles and has by devious means erected barriers intended to impede free communication and regular association between that non-custodial parent and his or her child.** Although a parent is not required to perform the impossible, he must act affirmatively to maintain his relationship with his child, even in difficult circumstances. A parent has the duty to exert himself, to take and maintain a place of importance in the child's life. Thus, a parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment. A parent cannot protect his parental rights by merely stating that he does not wish to have his rights terminated.

*Id.* at 855-86 (emphasis added) (citation omitted). Additionally, in order "to safeguard his or her parental rights, a parent may not acquiesce in obstructive behavior by the custodial parent. [Rather, h]e or she must **exhibit reasonable firmness** in refusing to yield to such obstacles." *In re*

*Adoption of Hutchins*, 473 A.2d 1089, 1092 (Pa. Super. 1984) (emphasis added).

In **In N.M.B.**, *supra*, a mother similarly appealed from a trial court order denying her petition to terminate a father's parental rights to their child under section 2511(a)(1). In that case, mother and father were never married and six months prior to child's birth in 1992, father was arrested and incarcerated, with the possibility of parole in 2005. Mother brought child to prison to visit father once in 1993 and once again in 1994. Mother then discontinued the jailhouse visits. During child's early life, mother and father remained in contact through letters and phone calls. When father would request pictures and information about child, mother would comply with his requests. Father sent child a Christmas gift when she was two years old in 1994.

When mother purchased a new home in 1998 with her current spouse, the couple moved and provided father with a change of address, but no telephone number. At this time, mother stopped sending pictures and updating father on child's life. From 1998-2000, Father sent occasional correspondence to mother for child and also arranged for a Christmas present to be sent to child through a church organization that assists persons in jail. Father did not call mother during this time period, testifying that he did not have her telephone number and did not have access to a phone book in prison. In late 2001, father asked a cellmate's family to find

mother's listing; he had mother's phone number put on the approved prison mailing list in January 2002.

From the summer of 2000 to January 2002, father stopped communicating with mother. Finally, in January of 2002, father called mother's home, but received no answer. Later that month, mother's attorney sent father a letter requesting that he consent to termination of his parental rights so child could be legally adopted by her new husband. Father rejected the request by letter and reinstituted efforts to contact mother through frequent calls and letters through May 2002. Father also alleged that he made two attempts to mail a complaint for visitation to family court, but they were returned for incorrect addresses. A third visitation complaint, father claimed was not returned, so he assumed it had been filed. However, father waited more than seven months to send a letter to the court to inquire about the status of the complaint and received no response. From May 2002 to January 2003, father made no further contact with mother or child. In March 2003, mother filed the petition seeking to terminate father's parental rights to child.

At the termination hearing, mother admitted that she was the one who stopped taking child to visit with father in prison. She also testified that father's attempts to communicate with child were "inconsistent" and that in 1998 she stopped communicating with father when he would send letters to her for child. Mother testified that father never inquired about child's progress in school or about her in general, and that her new husband

fulfilled the fatherly role by providing financially and emotionally for child. Father testified that he tried to maintain contact with child, through mother, during his incarceration. He used phone contact and letters after mother stopped visiting the prison with child. Father was unable to financially support child during his incarceration and stated that he drastically reduced his contact with mother after she moved because he thought it was in child's best interest to allow mother to establish her new family life with her new husband.

On appeal, our Court ultimately reversed the trial court, concluding that the mother satisfied her burden under section (a)(1), but remanded the case for a hearing to determine what effect termination of the father's rights would have on the child's needs and welfare under section 2511(b). Specifically, the Court found that: (1) father chose not to utilize legal resources available to him in prison or personal contacts out of prison to establish visitation with or custody of child; (2) father offered insufficient excuses to explain his inaction; (3) father failed to seek assistance from others to help him establish consistent, meaningful bond with child because he did not think efforts would be successful; (4) father's lack of consistent contact, due to fact that he knew child was growing up in stable family and wanted to wait until mother though it was appropriate for him to see child, fell short of meeting obligation to act affirmatively to maintain relationship with child. *Id.* at 856-57.

We find our Court's decision in **N.M.B.** instructive and determinative of our decision today. Mother testified that when Father failed to abide by their informal custody arrangement, she thereafter denied his requests to visit with Child, stating, "Yes. We have a life. I shouldn't have to stop our schedules to accommodate him and his special needs [referring to his drug issues]." N.T. Termination Hearing, 7/22/14, at 54-55. Despite Mother's obstructive behavior, Father did very little in the face of these barriers to fulfill his parental duties since his last contact with Child in early 2010. Specifically, the sole record evidence reveals that Father sent Child an Easter basket in 2010, filed for custody of Child in 2011, showed up unannounced at Mother's home a couple times in 2011, and occasionally paid child support.[6]

Instantly, the trial court credited Father's testimony that he will now start being financially responsible for Child (despite $3,400 in arrearages), is gainfully employed, has adequate housing and has successfully completed substance abuse treatment at Gateway. Moreover, the court found that "Father [has] attempt[ed] to maintain a relationship [with Child]" despite

_____

[6] The record is not clear with regard to whether the Easter basket was sent in 2010 or 2011. Mother testified that it was sent in 2010, N.T. Termination Hearing, 7/22/14, at 38, 52-53, 58, 59, while Father testified it was sent in the spring of 2011. **Id.** at 130, 137. The trial court, however, states in the fact section of its Rule 1925(a) opinion that "Father . . . [took] an Easter basket . . . to Mother's grandmother in the spring of 2010." Trial Court Opinion, 11/25/14, at 4. We will, therefore, use this date.

Mother's barriers. Trial Court Opinion, 11/25/2014, at 14. As a result, the court concluded that termination was not **clearly** warranted. Based on a close reading of the record and the applicable standard of review, we find that the court's decision amounted to an error of law.

It is well established that:

[T]he parental obligation is a positive duty which requires affirmative performance. This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*In re Burns*, 379 A.2d 535, 540 (Pa. 1977).

Father has not had any direct contact with Child since January 2010. Since the spring of 2010, Father has not made any attempt to send Child gifts or cards, or attempted to contact Maternal Great-grandmother when Child resided there. Father also failed to attend a custody conference, on two occasions, after he had had filed for custody in 2011. The trial court found Father's failure to appear "inexcusable," and noted that Father "was not exceptionally diligent in maintaining a relationship with [Child]." Trial Court Opinion, 11/25/14, at 14. Father testified that he failed to attend the custody conferences because he had relapsed with his drug addiction. *Id.* at 135. Additionally, there was a protection from abuse (PFA) order against Father (solely with regard to Mother) from October 2012-October 2013. Even though Father incorrectly believed that the PFA precluded him from having contact with Child, Father did not attempt to contact Child after the

- 14 -

PFA expired (in October 2013) and before the filing of Mother's termination petition in April 2014 – a period of six months.

Moreover, Father testified that during that same time period, he chose not to refile for custody because he first wanted to make sure that he had secured a place to live and had a stable job and because of financial constraints. N.T. Termination Hearing, 7/22/14, at 146-47. However, "parental rights may not be preserved by waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities," *In re D.J.S.*, 737 A.2d 283, 287 (Pa. Super. 1999), "while others provide the child with his or her immediate physical and emotional needs." *In re Adoption of Godzak*, 719 A.2d 365, 368 (Pa. Super. 1998) (citation omitted).

Where the law requires that Father "exercise reasonable firmness in resisting obstacles placed in [his] path [to] maintain[] the parent-child relationship," we find it inconsistent for the trial court to determine that termination under section (a)(1) was not proven where it found that Father "was not exceptionally diligent in maintaining a relationship with [Child]." Moreover, while the court may have found Father credible, Father presented no documentation showing that he successfully completed drug treatment (keeping in mind the fact that he relapsed the other six times he had been in drug treatment), attends NA, and has a stable job. In addition, while Father

submitted pictures of a bedroom in his residence for Child, he admitted that there is no bed for her to sleep on.[7]

Because Father failed to act affirmatively in order to maintain his relationship with Child, even under difficult circumstances created by Mother as well as those he created himself, under a totality of the circumstances we find that Mother proved the statutory elements for termination under section 2511(a)(1).[8]   For these reasons, we must reverse[9] the trial court's order denying Mother's petition to terminate Father's parental rights.  **Compare In re C.M.S.**, **supra** (court erred in not terminating father's parental rights to child under 2511(a)(1) where Father waited nearly 14 months after child's birth before asserting parental rights; even though mother and woman handling child's adoption were deceptive and created obstacles for father, father failed to obtain custody or visitation of Child which failed to show

_____

[7] A photocopy of a picture of the room shows a dresser and a lamp as the only furniture in the room.

[8] Having found that Mother proved termination was warranted under section 2511(a)(1), we need not address her second issue regarding termination under another subsection of 2511(a).

[9] We come to this conclusion mindful of our standard of review on appeal that we must affirm the trial court where "competent evidence exist[s] to support the trial court' conclusion [as t]he trial court was in a better position to determine credibility, evaluate the evidence, and make a proper ruling." **See Adoption of Atencio**, **supra** at 1068; **see also In re C.W.U., Jr.**, 33 A.3d 1, 8 (Pa. Super. 2011) ("If [the Superior Court of Pennsylvania] would have reached a different conclusion on the record of a case, we may not re-weigh the evidence and the credibility determinations of the trial court.").

"reasonable firmness") **with In re Adoption of C.O.**, 471 A.2d 541 (Pa. Super. 1984) (where father lived 800 miles from son in Pennsylvania, employment prevented him from returning to Pennsylvania very often, father visited son every time he returned to Pennsylvania, although mother made visits very restrictive, and sent son birthday presents, court improperly terminated father's rights under section 2511(a)(1)).

Termination under Section 2511(b)

Once the statutory grounds for termination under section 2511(a) have been met, the court must consider whether the child's needs and welfare will be met by termination pursuant to section 2511(b). **In re C.P.**, 901 A.2d 516 (Pa. Super. 2006). Here, since the trial court determined that Mother did not prove, by clear and convincing evidence, that termination of Father's parental rights was warranted under section 2511(a), the court did not need to consider termination under section 2511(b).[10]

_____

[10] We are aware that in its Pa.R.A.P. 1925(a) opinion the trial court does address section 2511(b), stating, "[t]hough the Court's resolution of this case does not require us to address the considerations of 23 Pa.C.S. § 2511(b), we believe that there are two matter deserving discussion." Trial Court Opinion, at 16. The court then goes on to discuss how in its opinion there was no parent-child bond due to Father's lack of contact with Child since she was three, **id.**, and how Child is thriving in Mother and Stepfather's care. **Id.** While Child may be doing well in her present home life, this does not address the fundamental issue under section 2511(b) -- the nature and status of the parent-child bond [and] . . . [the] effect on the child of permanently severing the bond." **In re C.P.**, 901 A.2d at 520. Moreover, we remind the trial court that "*[o]nly after* determining that the parent's conduct warrants termination of his or her parental rights must the court engage in the second part of the [section 2511] analysis[.]" **In re D.A.T.**,
*(Footnote Continued Next Page)*

The determination of the best interests of the child under section 2511(b) is a separate consideration and is not dictated by a finding that the statutory elements under section 2511(a) for termination are present. *In re S.D.T., Jr.*, 934 A.2d 703 (Pa. Super. 2007). Incumbent in the second part of the analysis is discerning "the nature and status of the parent-child bond, [by] paying close attention to the effect on the child of permanently severing the bond." *In re C.P.*, 901 A.2d at 520. While expert testimony and a formal bonding analysis are not specifically required by statute, the moving party must at least produce sufficient evidence to prove that severing the bond between child and parent will not have negative effects on the child. *Id.*

The GAL's recommendation that it is in Child's best interest to terminate Father's parental rights under 2511(b) is based on her interview with Child who stated that "she barely knows [Father]," GAL Report, 7/17/14, at 2, the general notion that there "clearly" has been "minimal contact between [Child] and her father during the course of the age of 2-3 to her present age of 7 years old," *id.*, and the lack of any testimonial evidence of a bond. GAL Recommendation, 7/31/14, at 6. However, the GAL never observed Father and Child together to make a true bonding assessment.

*(Footnote Continued)* ⸻⸻⸻⸻⸻⸻⸻

91 A.3d 197, 205 (Pa. Super. 2014). Therefore, we interpret its discussion of section 2511(b) as *dicta*, which does not bind us on an appeal.

*See In re E.M.*, 620 A.2d 481 (Pa. 1992). *See In the Interest of K.Z.S.*, 946 A.2d 753 (Pa. Super. 2008) (if any evidence of bond between child and parent, wise approach is to have bonding evaluation performed and made part of certified record).

Because there is no clear and convincing evidence to prove that termination is in Child's best interest under section 2511(b), we are constrained to reverse and remand this matter to give the parties an opportunity to present further testimony regarding the emotional bonds between Child and Father. While we acknowledge that direct observation of the interaction between child and parent is not necessary, and may, in some cases, be detrimental to child, we also cannot infer in this case that *no* bond exists where, after they no longer lived together, Child and Father saw each other every weekend and on Wednesdays for the first three years of Child's life.

CONCLUSION

In the instant case, the record does not support a finding that Father has "act[ed] affirmatively to maintain his relationship with [C]hild" and "exhibit[ed] reasonable firmness in refusing to yield to [the] obstacles" put in place by Mother. For these reasons, we find that the trial court erred in concluding that Mother did not prove that termination was proper under section 2511(a)(1). However, we must remand the matter to determine whether Mother has proven, by clear and convincing evidence, that termination is proper under section 2511(b).

Order reversed. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.[11]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/2015

---

[11] In concluding that this case requires reversal, we have not ignored the fact that Father claims to have an emotional bond to Child. N.T. Termination Hearing, 7/22/14, at 125, 148; GAL Report, 7/17/14, at III. However, under section 2511(b), the focus must be what the effect that severing a bond would have on Child. Therefore, even if Father feels he has a bond with Child, we must find out whether Child has any such reciprocal bond to Father and, if so, what effect severing that bond would have on Child's developmental, emotional, and physical welfare. **In re C.M.S.**, **supra**.