487 Pa. 125 (1979)
408 A.2d 1387
In re D.J.Y.
Appeal of R.E.Y., Sr., and E.R.Y.
Supreme Court of Pennsylvania.
Submitted October 8, 1979.
Filed December 21, 1979.
*126 *127 David E. Wagenseller, III, Carol Gundel Falk, Lancaster, for appellant.
Melvin H. Hess, Lancaster, for Genevieve Rose Young.
Before EAGEN, C.J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

OPINION OF THE COURT
ROBERTS, Justice.
Appellants, paternal grandparents of D.J.Y., appeal from the orphans' court dismissal of their petition to adopt D.J.Y. The court dismissed the petition on the ground that appellants failed to establish a case for termination of the parental rights of appellee, G.R.Y., the natural mother. Although the court found that appellee failed to maintain contact with *128 D.J.Y. for a period of six months, it also found that appellee's failure was attributable to appellants' deliberate actions designed to thwart appellee's attempts to contact her son. We conclude that the orphans' court findings are supported by the evidence and affirm the decree.
D.J.Y. was born on March 29, 1970 to appellee and her husband. For the first few months of D.J.Y.'s life, the family lived in the home of appellants. Appellee's marital relationship with her husband deteriorated and she left the home. D.J.Y. remained in appellants' care. Between 1971 and 1974, D.J.Y.'s parents attempted to reconcile and re-establish a family household. During this time, D.J.Y. continued to reside with appellants.
On September 2, 1977, appellants filed a petition for the adoption of D.J.Y. At the hearing on the petition, appellants testified that appellee had failed to perform her parental duties from 1974 to 1977. They claimed that appellee, during that period, never contacted, met or supported D.J.Y., and thus appellee's parental rights should terminate pursuant to section 311(1) of the Adoption Act of 1970.
Appellee, on the other hand, testified that during this period the natural father and appellants thwarted her attempts to maintain contact with her son. According to appellee, the grandfather forced her to leave the home in 1971 and would not permit her to take D.J.Y. Between 1971 to 1973, appellee saw D.J.Y. sporadically, always at appellants' home. When appellee and her husband reunited in 1973, she sought to have D.J.Y. live with them. Her husband, however, told her that they did not have room for D.J.Y. in their one room apartment, and could not afford to keep him. Further, her husband told her that appellants had "custody" of D.J.Y. and would care for the child until they, the parents, were able to improve their financial situation and find more spacious living quarters. During that time appellee visited her son at appellants' home, but was unable to enjoy a mother-son visitation with D.J.Y. because the grandfather's "rules" prohibited her from interacting with the boy. On a few occasions, D.J.Y. was permitted to visit with appellee at her home. These visits, however, *129 never lasted overnight, as the grandfather would not permit it. Appellee stated that because she had been informed that appellants had "custody," and because she thought her husband still planned to bring D.J.Y. back when financially able, she never contested the visitation arrangements. She also testified that, based on threats, she feared that appellants would call the police to have her arrested if she attempted to establish a more extensive relationship with her son.
Appellee and her husband moved to larger quarters and began to improve their financial position. When appellee asked her husband about the return of D.J.Y., he always responded that they would regain custody of D.J.Y. when they were better situated. Appellee then began to suspect that her husband had no intention of regaining custody of D.J.Y. Their relationship deteriorated, and appellee again left her husband in November, 1974. Appellee then offered to allow her husband to visit the couple's other son who was in appellee's custody, if he would arrange for her to visit D.J.Y. Although appellee carried out her part of the bargain, her husband arranged only one visit with D.J.Y. for her.
Appellee testified that after the second separation her attempts to contact D.J.Y. were impeded by her husband and appellants. Her testimony indicated that gifts she sent to D.J.Y. were not passed along to him by appellants and that her attempts to see D.J.Y. on the street in front of appellants' home met with great resistance. At one point appellants told appellee not to walk on their side of the street, or they would call the police. Appellee indicated that she last sent D.J.Y. a birthday gift in the early part of 1976. Her other contacts with D.J.Y. were reduced to attempts to see him on the playground at school or sometimes on the street.
On the basis of this testimony, the orphans' court concluded that the activities of appellants prevented appellee from maintaining a parental relationship with her son. The court therefore declined to terminate appellee's parental rights in D.J.Y., and dismissed appellants' petition for adoption.
*130 On this appeal, we must accept the findings of fact of the orphans' court. Unless the court abused its discretion or committed an error of law, such findings are entitled to the same weight given a jury verdict. Adoption of R.H., 485 Pa. 157, 401 A.2d 341 (1979); In re William L., 477 Pa. 322, 383 A.2d 1228 (1978); Cohen Will, 445 Pa. 549, 284 A.2d 754 (1971). Furthermore, in a case such as this, a party seeking to adopt must establish the statutory requirements for involuntary termination by a preponderance of the evidence. Adoption of Baby Girl Fleming, 471 Pa. 73, 369 A.2d 1200 (1977); Adoption of McAhren, 460 Pa. 63, 331 A.2d 419 (1975); Adoption of McCray, 460 Pa. 210, 331 A.2d 652 (1975). Here the orphans' court determined that appellants failed to satisfy their burden of proof. Review of the record satisfies us that the orphans' court findings are supported by competent evidence, and that there is no reason to disturb those findings. See Adoption of David C., 479 Pa. 1, 387 A.2d 804 (1978); In re William L., 477 Pa. 322, 383 A.2d 1228 (1978); In re Involuntary Termination of Parental Rights of S.C.B. and K.T., 474 Pa. 615, 379 A.2d 535 (1977); In re Adoption of M.T.T., 467 Pa. 88, 354 A.2d 564 (1976).
The essence of appellants' argument is that appellants' conduct claimed to have imposed a hardship upon appellee does not excuse appellee's failure to perform parental duties. This contention is meritless. It was entirely proper for the orphans' court to consider the barriers created by appellants in determining that appellee had not abandoned her son. A parent's efforts are always considered "in light of existing circumstances." Adoption of David C., 479 Pa. 1, 7, 387 A.2d 804, 807 (1978); see also Adoption of R.I., 468 Pa. 287, 361 A.2d 294 (1976); Adoption of McCray, 460 Pa. 210, 331 A.2d 652 (1975). Indeed, this Court has stated:
"the question whether a parent has failed or refused to perform parental duties must be analyzed in relation to the particular circumstances of the case. A finding of abandonment, . . . will not be predicated upon parental conduct which is reasonably explained or which resulted from circumstances beyond the parent's control. It may only result when a parent has failed to utilize all *131 available resources to preserve the parental relationship." (citations omitted)
In re Burns, 474 Pa. 615, 625, 379 A.2d 535, 540 (1977). Cf., In re Adoption of Farabelli, 460 Pa. 423, 333 A.2d 846 (1975) (parent excused from performing parental duties where efforts to contact child would cause the child's living situation to deteriorate). This case is similar to Adoption of S.H., 476 Pa. 608, 383 A.2d 529 (1978). There, as here, the natural parent on several occasions was unable to contact the child due to the actions of the former spouse and mother-in-law. There the natural parent repeatedly attempted to speak with the child on the telephone, to meet with the child, and to deliver gifts. These efforts, like those of appellee here, were unsuccessful. This Court held that the natural parent affirmatively performed his parental responsibilities as best he could in the circumstances, and that the totality of circumstances established that the parent "wanted to remain as a positive force in his son's life but was thwarted in his efforts . . . ." Id., 476 Pa. at 610, 383 A.2d at 530. The conclusion there, that the natural parent's rights should not be terminated, applies with equal force here.
Appellants also contend that appellee failed to use the judicial resources available to her to maintain a parentchild relationship. The failure to utilize this resource, appellants contend, necessitates a finding that appellee's efforts to preserve her parental rights were insufficient. We disagree. A parent must pursue a "course of conduct during the period in question consistently aimed at maintaining [the parental] relationship . . .," id., 476 Pa. at 615, 383 A.2d at 532-33 (1978), using those resources reasonably available to that parent and exercising persistence in attempting to overcome obstacles placed in the path of the parent-child relationship. Matter of Kapcsos, 468 Pa. 50, 360 A.2d 174 (1976); Adoption of M.T.T., 467 Pa. 88, 354 A.2d 564 (1976); Adoption of McCray, 460 Pa. 210, 331 A.2d 652 (1975). Although appellee did not pursue judicial action to challenge appellants' conduct, she did make reasonable attempts to overcome the obstacles appellants placed in her path. We agree with the orphans' court determination that on this *132 record appellee's failure to pursue legal actions does not compel a conclusion that her conduct in attempting to maintain parental contact with her son was unreasonable. As this Court stated in Adoption of S.H., where a parent makes reasonable attempts to overcome obstacles created by the party seeking to terminate parental rights, "a mere showing that the [parent] could conceivably have pursued legal action more promptly cannot justify termination of [parental] rights." Adoption of S.H., 476 Pa. 608, 616, 383 A.2d 529, 533 (1978); see also Adoption of McAhren, 460 Pa. 63, 331 A.2d 419 (1975).[*]
The decree of the Orphans' Court Division of the Court of Common Pleas of Lancaster County is affirmed.
Each party pay own costs.
MANDERINO, J., did not participate in the decision of this case.
NOTES
[*] Appellants argue that the child's welfare would be best encouraged by granting the petition to adopt. Their argument is premature. A decree terminating the rights of the natural parents must be entered prior to the consideration of the child's best interests with respect to who might become the adoptive parent(s). See In re Adoption of R.I., 468 Pa. 287, 361 A.2d 294 (1976), cert. denied, 429 U.S. 1032, 97 S.Ct. 722, 50 L.Ed.2d 743 (1977); Adoption of Young, 469 Pa. 141, 364 A.2d 1307 (1976).