317 Pa. Superior Ct. 473 (1983)
464 A.2d 419
In re Termination of Parental Rights of F.L.D. in the Minor, M.A.D.
Appeal of F.L.D.
Supreme Court of Pennsylvania.
Argued January 12, 1983.
Filed July 29, 1983.
*475 Clarence A. Crumrine, Washington, for appellant.
Eric J. Held, Washington, for appellees.
Frank Carl Roney, Jr., Canonsburg, for participating party.
Before POPOVICH, MONTGOMERY and VAN der VOORT, JJ.
PER CURIAM:
This is an appeal by F.L.D., natural father of M.A.D., from an order terminating his parental rights under 23 Pa.C.S.A. § 2511(a)(1).[1] Appellant raises the following issues in this appeal: (1) the trial court's decision is not based on clear and convincing evidence; (2) § 2511(a)(1) is unconstitutionally vague; and (3) § 2511(a)(1) permits an unconstitutional state intrusion into the parent-child relationship. We disagree and affirm.
*476 M.A.D., born May 21, 1972, is the only child of the marriage between appellant and K.D.G., the petitioner herein. Appellant and K.D.G. separated approximately a year after M.A.D.'s birth and were divorced on October 7, 1975. K.D.G. has had continuous custody of M.A.D. since his birth. In 1978, K.D.G. married C.G., who desires to adopt the child.
From the time of separation until February 1976, appellant visited his son frequently and made support payments of $15.00 per week. Since K.D.G. was receiving public assistance, these support payments were turned over to the welfare agency. In February 1976, the support payments stopped. When K.D.G. questioned appellant about support, he told her he had quit his job and had no money. Appellant testified to telephone conversations with K.D.G. in February and June of 1976, although K.D.G. recalled only the conversation in June. She did, however, admit that she refused appellant's oral request for visitation. Among the reasons K.D.G. felt justified her refusing visitation were that appellant told her he had quit his job and was living in a "store-front" church in a rather undesirable neighborhood and that since appellant was taking the child from New Jersey (where K.D.G. lived) to Pennsylvania (where appellant lived), she was afraid she might have trouble getting the child back. From June 1976 until the initiation of the present proceedings in August 1980, neither K.D.G. nor M.A.D. had any direct contact with appellant. Appellant did, apparently, attempt to enforce visitation through the courts because K.D.G. received notice of a hearing in December 1977 and an informal conference in July 1978.[2] She did not attend either and nothing further was forthcoming from the court. After F.L.D. received notice of the instant proceeding, he deposited $3,885.00 with his attorney, claiming that he had paid $15.00 per week support into an *477 "escrow" fund kept at his residence because he could not locate K.D.G.[3]
Appellant testified that he had no intention of abandoning his parental rights and that K.D.G. had told him several times that she would find a new father for M.A.D. Appellant also presented the testimony of a clinical psychologist who concluded that F.L.D.'s personality traits were such that when he was rebuffed in his requests for visitation, he ceased making attempts to see his son. He further testified that appellant had not, psychologically, abandoned M.A.D.
Because of the recent decisions in Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) and In re: Adoption of M.E.T., 313 Pa.Super. 316, 459 A.2d 1247 (1983), we find it necessary to address the issue of the proper standard of proof even though neither party contends that the trial judge used an incorrect standard. In Santosky, the United States Supreme Court held that the grounds for terminating parental rights had to be proven by clear and convincing evidence rather than by a preponderance of the evidence. In M.E.T., our court en banc stated that the "effect of the Santosky decision was to raise the burden of proof required in involuntary termination of parental rights cases from a `preponderance of the evidence' to `clear and convincing evidence.'" M.E.T. held, therefore, that any case where parental rights were terminated using the preponderance of the evidence standard which was pending on appeal at the time Santosky was filed would be remanded for further proceedings in light of Santosky. The reason for remanding, rather than having the appellate court review the record in light of the new standard, is because the standard affects the way the *478 evidence is weighed by the factfinder, that is, the trial court. In the instant case, the trial court made clear that it weighed the evidence under the clear and convincing standard. Indeed, the trial court specifically considered Santosky and determined that it "approves the Pennsylvania standards of clear and convincing evidence, In re William L., supra, and has no impact on our disposition . . ." (OP. p. 30) We note, as well, that the Santosky opinion also cites In re William L., 477 Pa. 322, 383 A.2d 1228 (1978) to support its conclusion that Pennsylvania requires clear and convincing evidence to support a decree terminating parental rights. It is clear, therefore, that the standards of Santosky have already been met in this case and that remand would serve no purpose.[4]
Turning now to the issues raised by appellant, he first argues that there is insufficient evidence to support the decree terminating his parental rights. He contends that this case is one where "obstructive behavior on the part of the custodial parent [was] aimed at thwarting the other parent's maintenance of a parental relationship." In re Adoption of B.D.S., 494 Pa. 171, 431 A.2d 203 (1981). The only evidence of anything even approaching obstructive behavior on the part of K.D.G. is the testimony that she told him she did not want him to visit M.A.D. Although K.D.G. may not have encouraged visitation, in the words of the trial judge, she "did not deny him access to the child, did not refuse any proferred gifts, cards, support or acknowledgments of love and concern, for none was forthcoming." (Op. p. 11) Also, although appellant argues that he could not locate K.D.G. and M.A.D., there is no evidence of any proferred cards, gifts, support, etc., during the period from June 1976 to February 1978 when appellant knew where *479 K.D.G. and M.A.D. were residing. Nor is there any evidence that appellant ever attempted to locate K.D.G. and M.A.D. after they moved to Pennsylvania in 1978. See, In re Adoption of McCray, 460 Pa. 210, 331 A.2d 652 (1975). The minimal contacts appellant had with M.A.D., as detailed above, certainly do not constitute a course of conduct aimed at maintaining the parental relationship, In re D.J.Y., 487 Pa. 125, 408 A.2d 1387 (1979), nor do they affirmatively demonstrate the love, protection and support M.A.D. is entitled to from his father, In re Farabelli, 460 Pa. 423, 333 A.2d 846 (1975). Rather, it appears that appellant had no interest in his son at all and would likely not have demanded or attempted to see his son again were it not for the instant petition. See, In re Adoption of Orwick, 464 Pa. 549, 347 A.2d 677 (1975). Under these circumstances, we have no hesitation in concluding that there was clear and convincing evidence to support the trial court's finding that appellant had evidenced a settled purpose to relinquish his parental rights and failed or refused to perform his parental duties as required by 23 Pa.C.S.A. § 2511(a)(1).
Secondarily, appellant complains that the trial court failed to consider the needs and welfare of the child as directed by 23 Pa.C.S.A. § 2511(b). The record belies this claim. Indeed, not only did the trial court hear such evidence and treat this issue in his opinion, but the evidence had to be admitted over appellant's objection. (R. 75a-81a).
Appellant's first constitutional claim is that the words "refused or failed to perform parental duties" contained in 23 Pa.C.S.A. § 2511(a)(1) are unconstitutionally vague. In the instant case, however, the trial court found, and we agree, that appellant's parental rights could be terminated under the alternative grounds that he evidenced a settled purpose to relinquish those rights. Appellant does not argue that that portion of the statute is vague. Since we have affirmed the trial court's finding on the basis of settled purpose to relinquish parental rights, and that finding alone is sufficient to affirm the order, Matter of Adoption of David C., 479 Pa. 1, 387 A.2d 804 (1978), we need *480 not concern ourselves with whether a portion of the statute containing a different basis for terminating parental rights is or is not constitutionally vague. Weber v. Lynch, 237 Pa.Super. 48, 346 A.2d 363 (1975).
Finally, appellant complains that the statute under which his parental rights were terminated is an unconstitutional intrusion by the state into the parent-child relationship. Appellant contends that the child has been well cared for and that the state has not shown that the failure to terminate appellant's parental rights would result in any physical or emotional harm to the child. He claims, therefore, that the state has no compelling interest that would justify infringing on the parent-child relationship. Initially, we must note, as did the trial court, that we find it hard to believe that "after this hiatus of almost five years, there exists a parent-child relationship that can be continued." (Op. p. 26) Practically speaking, terminating appellant's parental rights and permitting C.G. to adopt M.A.D. will not disrupt any family unit but rather will recognize the family unit that already exists. See, Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978).
As a matter of constitutional law, a parent's rights are not beyond regulation, even as against a First Amendment claim. Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944). As parens patriae, the state may limit the power of the parent if it appears that parental decisions will jeopardize the health or safety of the child, or have a potential for significant social burdens. Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). In accordance with this principle, the state has a legitimate interest in enforcing financial support for children, even through criminal proceedings, Jones v. Helms, 452 U.S. 412, 101 S.Ct. 2434, 69 L.Ed.2d 118 (1981), and in providing for the "care, protection, and wholesome mental and physical development of children" who are adjudicated dependent or delinquent. 42 Pa.C.S.A. § 6301.
In the instant case, there are further state interests involved because this case would not have arisen were it not *481 for C.G.'s desire to adopt M.A.D. In re B.E., 474 Pa. 139, 377 A.2d 153 (1977). In such a case, there is an interest in ensuring future material needs (an adopted child inherits in the same manner as a natural child, 20 Pa.C.S.A. § 2108) as well as present support (a step-parent is not obligated to support stepchildren) Marter v. Ross, 294 Pa.Super. 241, 439 A.2d 1181 (1982).
Finally, we note that this is not a case where the state has disrupted an on-going parent-child relationship as it can do under the Juvenile Act, 42 Pa.C.S.A. § 6301 et seq. Rather, it is a case where appellant, by his own choice, has abdicated his responsibilities as a parent. The state's role in terminating his parental rights is to formally recognize that which has already occurred. Quilloin v. Walcott, supra. We think that these interests sufficiently justify the state's limited role in terminating appellant's parental rights.
Affirmed.
NOTES
[1] Grounds for involuntary termination

(a) General rule.  The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties. 23 Pa.C.S.A. § 2511(a)(1).
[2] Two $15.00 support payments were made at approximately this same time.
[3] We note with some skepticism appellant's claim that he could not locate K.D.G. during this period. The evidence is undisputed that K.D.G. and M.A.D. lived in the same apartment from February 1974 until March 1978 when K.D.G. married C.G. In addition, there is no evidence whatsoever that appellant attempted to locate K.D.G. after she moved from the apartment. In fact, appellant testified that he did not contact her parents to ascertain her address because they "had something to do" with the initial separation. However, appellant had visited M.A.D. at their home for nine months following the initial separation.
[4] We note as well that M.E.T. does not require that new hearings be held. Such a decision is left to the discretion of the trial court. If the trial court is convinced that new evidentiary hearings are not required, it need only reconsider its prior findings in light of the clear and convincing standard. In the instant case, this would be an exercise in futility since the trial court has already considered the evidence under the clear and convincing standard.