J-A15014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO: L.A.W., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.J.W., FATHER | No. 1580 MDA 2016 |

Appeal from the Decree of August 25, 2016
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 36-2016-0045

BEFORE:  MOULTON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                **FILED AUGUST 02, 2017**

D.J.W. ("Father") appeals from the August 25, 2016 decree entered in the Lancaster County Court of Common Pleas, which involuntarily terminated his parental rights to his daughter, L.A.W.[1] ("Child").  We affirm.

The trial court set forth the following factual and procedural history:

> [Child] is a minor female child born [in] October [of] 2006 . . . .  She currently resides with Petitioners[, D.T. ("Mother") and W.T. ("Step-Father")]. . . .  Petitioners were married on December 25, 2015. . . .  [Child] has resided with Mother since birth and Step-Father since December 2015.
>
> [D.J.W.] is the biological father of [Child] and is 38 years old.  Father is single and resides at the State Correctional Institute – Houtzdale, Pennsylvania.

---

[1] In the certified record, L.A.W. is also referred to as L.W.

[When Child] was born . . . . Mother and Father were married and they lived as an intact family with Child and Mother's oldest daughter, [Child]'s half-sister. In December 2010, Father was arrested for the sexual abuse of [the oldest daughter]. Father continued to have telephone contact with [Child] and Mother during the course of the criminal trial, while incarcerated at Lancaster County Prison.

In December 2011, Father was convicted of rape by force, indecent assault of a minor, sexual assault forcible compulsion, and multiple other sexual offenses perpetrated against Child's half-sister, beginning when [the oldest daughter] turned nine years old and continuing over a nine year period. He was sentenced to 14 to 30 years in prison. As an element of Father's sentencing and classification as a sexual offender, he was not to have any contact with the victim or the victim's family. Father testified that he would talk to the Child for up to five minutes at a time, but admitted most of his phone contact was spent talking to Mother. Mother testified that Father's contact primarily focused on blaming Mother's oldest child for his actions and trying to convince Mother to believe his innocence. Mother testified she told Father to stop contacting her, but did not tell Father he could not contact [Child.] Father testified that he stopped calling because Mother no longer answered his calls.

Father was relocated to State Correctional Institute – Camp Hill, at which time he continued to send letters and cards to Mother and, occasionally, [Child.] On March 15, 2012, Mother signed a visitation form allowing [Child] to be placed on Father's visitation list. However, [Child] has never visited Father in prison at any point in his incarceration. All contact between [Child] and Father ended sometime in 2012 or early 2013.[2]

> [2] Mother changed her phone number in 2012 and testified she did not distribute this new number to Father or any of Father's family. Father testified that he continued to call Mother until 2013.

In September of 2014, after nearly two years of no contact, Father filed a custody action. For the first time,

- 2 -

Mother objected to Father's renewed contact with [Child]. A custody conference was scheduled for December 1, 2014. Father neither attended nor requested any accommodations. A Criminal History hearing was held on January 28, [2015], which Father also did not attend nor request any accommodations. At that time, and based upon the Father's sentencing order restricting contact with his victim's family, Mother was granted sole legal and physical custody of [Child] and the matter was dismissed for Father's lack of attendance.

During this same time, Father had also requested the Criminal Court reduce his sentence. When a hearing on the matter was held, which Father attended, Father requested that the Court allow him contact with his biological children. The court modified the sentencing order lifting the contact restriction to allow for contact if approved by the mother of the children. Since modification in early 2015, Father has made no attempt to contact Mother or [Child]. He also failed to file any further actions in the custody proceedings . . .

Prior to Father's sentencing, Paternal Grandmother (PGM) maintained a relationship with [Child] and Mother. She babysat, dropped off presents for Child, and invited them to family functions. Despite initiating the custody action in September 2014, Father did not try to contact [Child] through PGM. He did not ask about her medical, educational, or emotional welfare. When asked by his attorney what resources were available to him from prison in order to maintain contact, Father testified that he was able to write letters and make daily phone calls. However, Father testified he did not utilize either of these resources to reach out to [Child]. Since 2013, none of Child's paternal relatives have attempted to contact [Child], send cards or gifts, or asked to visit of their own volition or on Father's behalf.

[On] January [7,] 2016, after another year of no contact from Father, Mother filed for termination of Father's parental rights. The initial termination hearing and adoption proceeding was scheduled for April 1, 2016. Father was present via telephone and contested the termination of his parental rights. Both Mother and Father testified at the hearing. The matter was continued.

- 3 -

The termination proceeding resumed on May 23, 2016. Petitioners offered the testimony of Mother. Father offered the testimony of . . . [his] sister-in-law, and testified on his own behalf. The Court incorporated the custody action and the record in the criminal dockets into the record.

At the end of that hearing, the termination of parental rights proceedings were concluded and the record was closed. . . . On June 8, 2015, the Court ordered counsel for the Petitioners, counsel for Father, and the Guardian *ad litem* to submit written briefs. Counsel for all parties submitted their letter briefs in July 2016. The Guardian *ad litem*'s written recommendation was received by the Court on July 15, 2016, and served upon the parties.

Trial Ct. Op., 8/24/16, at 1-4 (some footnotes omitted). On August 25, 2016,[2] the trial court entered a decree terminating Father's parental rights pursuant to section 2511(a)(1) and (b) of the Adoption Act. On September 23, 2016, Father timely appealed to this Court.

Father raises two issues on appeal:

A. Did the lower court commit an error of law by allowing deliberate conduct of [an] opposing parent to be used as a basis for termination?

B. Does the aforementioned error of law require this Honorable Court [to] overrule the lower court's decree?

Father's Br. at 3 (suggested answers and other comments omitted).

Father argues that Mother deliberately prevented Father from communicating with or visiting Child and the trial court erred by not considering that fact when determining whether Father had made efforts to

---

[2] The trial court's opinion and decree were dated August 24, 2016, but were not filed until August 25, 2016.

maintain contact with Child. We consider Father's issues mindful of our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotations omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, which requires a bifurcated analysis. We have stated:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). The petitioner must "prove by clear and convincing evidence that [the] asserted

[statutory] grounds for seeking the termination of parental rights are valid."

***In re R.N.J.***, 985 A.2d 273, 276 (Pa.Super. 2009).

First, Father argues that the trial court erred in terminating his parental rights where Mother deliberately prevented Father from maintaining communication or contact with Child. According to Father, "Mother's deliberate actions resulted in an absence of communication between Father and [Child]. . . . [that] Mother used . . . as the *sole* reason for petitioning the lower court to terminate Father's rights." Father's Br. at 7. Father asserts that Mother's deliberate conduct may not be used to terminate his parental rights, especially when he "strove to maintain an affirmative relationship with his child." ***Id.***

Section 2511(a)(1) of the Adoption Act provides:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1). "A court may terminate parental rights under section 2511(a)(1) where the parent demonstrates a settled purpose to relinquish parental claim to a child **or** fails to perform parental duties for at least the six months prior to the filing of the termination petition." ***In re***

***Z.P.***, 994 A.2d 1108, 1117 (Pa.Super. 2010) (emphasis in original). The court should consider the entire background of the case and not simply

> mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his . . . parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

***Id.*** (quoting ***In re B., N.M.,*** 856 A.2d 847, 855 (Pa.Super. 2004)). However, "[w]ith respect to any petition filed pursuant to subsection (a)(1), . . . the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of petition." 23 Pa.C.S. § 2511(b); ***see In re D.W.***, 856 A.2d 1231, 1235 (Pa.Super. 2004) (holding that the post-petition evidentiary restriction "applies to the entire termination analysis").

In terms of parental duty, we are reminded

> [t]here is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*B., N.M.*, 856 A.2d at 855 (citations and quotations omitted). Our Supreme Court has provided guidance regarding the interaction between incarceration and termination pursuant to section 2511(a)(1):

> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness "in declining to yield to obstacles," his other rights may be forfeited.

*In re Adoption of McCray*, 331 A.2d 652, 655 (Pa. 1975) (citation and footnotes omitted).

With respect to conduct of an opposing parent, we have explained that

> [w]here a non-custodial parent is facing termination of his or her parental rights, the court must consider the non-custodial parent's explanation, if any, for the apparent neglect, including situations in which a custodial parent has deliberately created obstacles and has by devious means erected barriers intend to impede free communication and regular association between the non-custodial parent and his or her child. Although a parent is not required to perform the impossible, he must act

affirmatively to maintain his relationship with his child, even in difficult circumstances. A parent has the duty to exert himself, to take and maintain a place of importance in the child's life.

***B., N.M.***, 856 A.2d at 855-56 (citations omitted). "The pertinent inquiry is not the degree of success a parent may have had in reaching the child, but whether, under the circumstances, the parent has utilized all available resources to preserve the parent-child relationship." ***In re Shives***, 525 A.2d 801, 803 (Pa.Super. 1987).

The trial court found Father's argument unavailing:

> Father argues Mother prohibited contact which imposed barriers making his contact with Child impossible. The Court does not find this argument credible. Until Father initiated the custody action in 2014, Mother never prohibited contact between Father and [Child]. Even when Father's sentencing order prohibited contact between Father and the Child, Mother still allowed them to communicate and even put [Child] on Father's prison visit list.

> Pennsylvania law is clear that a parent must take affirmative steps to maintain a relationship with his or her child to the best of his or her ability under the circumstances as they exist. . . . Father clearly failed to exert himself to establish and maintain a place of importance in his child's life.

> Mother has lived at the same address for 21 years. [Child] has lived . . . at that address her entire life. Mother did not withhold any mail from Father addressed to [Child]. Father testified he did not send any cards, letters, or presents to [Child]. Father knew Mother's family, who resided in the same home with the same address for over 40 years. Moreover, prior to 2013, [Father's sister-in-law] testified that she saw [Child] every other weekend and that PGM cared for [Child] in her own home during those times. Father did not attempt to contact [Child] through Mother's family or his family. Father presented no

- 9 -

evidence that he inquired into Child's well-being from any of those individuals.

Assuming Father's argument, that Mother imposed barriers to his contact with [Child], was in fact true, Father clearly knew how to use legal avenues to contact [Child], evidenced by his custody petition filed in September 2014, and by his numerous petitions for resentencing hearings. Father waited almost a year and half [sic] after having no contact with [Child] before taking any legal action to assert his parental rights. Even after initiating action through the family court, Father did not arrange to participate in the proceedings while incarcerated. After holding two hearings in the matter, the Court awarded Mother custody based on Father's sentencing restrictions. Yet, once those restrictions were removed, Father did not initiate any actions in the custody matter to reflect the lifting of the restriction.

Trial Ct. Op., 8/24/16 at 7-8 (citations omitted).

We conclude that the trial court did not abuse its discretion. While it is true that some obstacles may render impossible any efforts at maintaining a parent-child relationship, Pennsylvania law is clear that the parent "must act affirmatively to maintain his relationship with his child, even in difficult circumstances." **B., N.M.**, 856 A.2d at 856. Here, the trial court found that, even when Father's sentencing order prevented him from contacting the victim or the victim's family, Father still had the resources to communicate with Child and Mother did not object to that communication. Even when Mother changed her phone number, Father could have reached out to his family to communicate with Child or written a letter to Child. As the trial court found, the key issue here is that Father did not attempt to maintain contact with Child using the resources available to him. Under these

circumstances, the trial court acted well within its discretion to terminate Father's parental rights.

Father's argument that he is entitled to relief because Mother created barriers to communicating with Child is without merit. As noted above, the issue is not whether Mother created such barriers, but instead whether Father used the resources available to him to communicate with Child in light of those barriers. The obstacles of which Father complains did not hinder Father's efforts at communication such that the trial court was required to deny the termination petition.[3] *Cf. In re D.J.Y.*, 408 A.2d 1387 (Pa. 1979) (affirming denial of termination petition where Father's family continually impeded Mother's efforts to visit and communicate with her son);

---

[3] In his brief, Father relies on *In re Adoption of J.S.M.*, 424 A.2d 878, (Pa. 1981), for the proposition that "[w]here the absence of communication [between parent and child] results from the deliberate conduct of the opposing parent, it may not be used as a basis for termination of parental rights, even when the lack of contact may have extended significantly beyond the statutory period." Father's Br. at 7 (quoting *J.S.M.*, 424 A.2d at 879-80). While that is a correct statement of the law, *J.S.M.*'s holding actually supports the termination of Father's parental rights in this case. In *J.S.M.*, the appellant failed to contact "his child for a period of approximately six years prior to the hearing." *Id.* at 880. The appellant argued "that his ex-wife placed numerous obstacles in his path," but the record showed that some of these obstacles were initiated by the appellant's conduct and the appellant could have overcome communication obstacles by reasonable diligence. *Id.* Therefore, our Supreme Court held that the trial court had not abused its discretion in terminating the appellant's parental rights. Here, like the appellant in *J.S.M.*, Father failed to contact Child for at least three years prior to the hearing and could have overcome communication obstacles through reasonable diligence.

***Adoption of S.H.***, 383 A.2d 529 (Pa. 1978) (reversing grant of termination petition where Father's "course of conduct . . . consistently aimed at maintaining his relationship with his son" despite Mother's refusal to accept Father's calls and Father receipt of threatening letter from Mother's fiancée stating that Mother would not bring child to visit Father in prison). Here, the record shows that Father had multiple resources through which to contact Child aside from direct phone calls with Mother and, even when Father's sentencing order prevented him from communicating with Child, Mother did not take affirmative steps to prevent such contact. Much of Father's argument centers on the trial court's credibility determinations, which we will not disturb on appeal. We agree with the trial court's conclusion that "despite having resource[s] to maintain contact with [Child], Father exerted no effort whatsoever to remain a part of his child's life." Trial Ct. Op., 8/24/16, at 8.[4]

Decree affirmed.

_____

[4] Because we conclude that the trial court properly determined that Father failed to maintain his relationship with Child, we need not address Father's second issue asserting that if the trial court erred, such error was fatal to the trial court's decree.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/2/2017</u>