J-S35018-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A.M.K., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: M.A.K., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1090 MDA 2021 |

Appeal from the Decree Entered July 16, 2021,
in the Court of Common Pleas of Schuylkill County,
Orphans' Court at No(s):  A63-061-20.35018-21

BEFORE:   OLSON, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:        **FILED: FEBRUARY 11, 2022**

In this matter, M.A.K. (Father) appeals the decree that involuntarily terminated his rights to 6-year-old son, A.M.K. (the Child), pursuant to the Adoption Act.  ***See*** 23 Pa.C.S.A. § 2511(a)(1), (b).  The termination petition was brought by L.D. (Mother) and M.D. (Stepfather).  The crux of Father's argument is that termination under Section 2511(a)(1) was improper, because Mother obstructed his ability to perform parental duties.  After careful review, we affirm.

The relevant factual and procedural history is as follows.  The Child was born in 2015, and the parents separated when the Child was about seven months old.  Mother and Father had an informal custody arrangement, whereby Father would see the Child several times per week.  When the Child

---

[*] Retired Senior Judge assigned to the Superior Court.

was nine months old, Mother met Stepfather. Approximately two years later, in September 2017, Mother and Stepfather married.

Meanwhile, Father became inconsistent in his exercise of custody. Father would appear late, or not come at all, or fail to return the Child as the parties agreed. Mother also heard that Father was selling drugs. As a result, Mother filed a custody complaint in April 2019. The parents reached a formal custody agreement in May 2019. The agreement included a requirement that Father submit to a hair follicle test to detect the presence of illicit substances. The custody order directed Father to submit to the drug test within 14 days, and it directed Mother to pay for it. By July 2019, Father had still not submitted a hair follicle test, and so Mother brought a contempt petition. Father failed to appear – apparently because he was evicted and did not receive notice – and the court issued an order prohibiting contact between Father and the Child until Father submitted to the test. Mother remained obligated to pay for the testing. Ultimately, Father never submitted to the hair follicle test. In Mother's estimation, Father had little contact with the Child since May 2019.

Mother and Stepfather brought a petition to terminate Father's parental rights on October 12, 2020. They alleged that Father's termination was warranted under Section 2511(a)(1), (b). The orphans' court held the hearing on May 19, 2021. **See generally** N.T. 5/19/21 (Day 1), at 1-71. The court held the record open to allow Father's witness to testify on June 2, 2021. **See generally** N.T. 6/2/21 (Day 2), at 1-22.

- 2 -

The hair follicle test was a central focus of Father's argument during the termination proceeding. He testified that he could not schedule the test until Mother paid for it. According to Father, Mother's noncompliance was an example of the ways she tried to obstruct Father's ability to exercise custody of the Child. Father testified that he had tried to see the Child several times, but that Mother had blocked his attempts. Father cited one incident where, instead of letting him see the Child, Mother called the police. According to Father, he was arrested on a warrant relating to an unpaid fine, and only when he was being placed in the police car did Mother come outside with the Child so they could watch. Father also testified that Mother refused to return his text messages.

Father claimed he had been trying to parent the Child, notwithstanding Mother's obstruction. Father testified he had been paying child support to Mother, and that he had delivered birthday gifts to the Child. Father also claimed that he had retained an attorney with MidPenn Legal Services in an attempt to work out the custody dispute.

The MidPenn attorney testified that Father had contacted her office in September 2019, August 2020, and in 2021. In January 2021, Father's attorney requested that the hair follicle test provision be lifted, because Mother refused to pay. The court denied the request. The parties made arrangements for the test to be conducted at the MidPenn Legal Services office, but by that point Mother and Stepfather's termination petition was

pending, unbeknownst to Father's attorney. Father's attorney decided to hold off on the testing, pending the outcome of the termination hearing.

Mother testified that Father never contacted her to coordinate the payment for the hair follicle test. She also explained that she did not receive much child support until the Covid-19 pandemic, when Father received unemployment compensation. Furthermore, Mother denied that Father ever brought the Child any gifts or cards. Stepfather testified at the hearing that he met the Child as a baby, and that he believed Father had seen the Child "two plus years ago." Stepfather testified that the Child refers to him as "my [Stepfather's first name]" and occasionally refers to him as "Dad."

The orphans' court ultimately granted the petition and terminated Father's rights under Section 2511(a)(1), and (b). Father timely-filed this appeal. He presents the following issues for our review:

> 1. Whether the [orphans'] court abused its discretion in determining that [Mother and Stepfather] produced clear and convincing evidence that [Father] by conduct continuing for a period of at least six (6) months immediately preceding the filing of the petition, either had evidenced a settled purpose of relinquishing parental claim to the minor child or had refused or failed to perform parental duties, as required by 23 Pa.C.S.A. § 2511(a)(1)?
>
> 2. Whether the [orphans'] court abused its discretion in addressing the second part of the bifurcated process and determining that the parental rights of [Father] should be terminated pursuant to 23 Pa.C.S.A. § 2511(b)?

Father's Brief at 4.

We review these issues mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

We emphasize that with termination cases, the record often supports the opposite result. *See id.; see also, e.g., In re Adoption of T.B.B.*, 835 A.2d 397, 394 (Pa. Super. 2003). Recently, our Supreme Court cautioned that the Superior Court is not in a position to make "close calls" when reviewing appeals from termination decisions. "When a trial court makes a 'close call' in a fact-intensive case involving…the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether the evidence supports that trial court's conclusions; the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court." *Interest of S.K.L.R.*, 256 A.3d 1108, 1124 (Pa. August 17, 2021). To that end, we observe that the orphans' court is "free to believe, all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts

in the evidence. *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

With our standard of review in mind, we turn to the substantive law governing the termination of parental rights. Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)). We add that we may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d at 1201.

Father's first appellate issue corresponds with the first prong of the termination under Section 2511(a)(1). His second appellate issue concerns the second prong of the bifurcated termination analysis under Section

2511(b). We therefore begin our discussion with a review of the first prong of the termination analysis under Section 2511(a)(1):

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either had evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

Termination under Section 2511(a)(1) will be warranted if Father has either evidenced a settled purpose of relinquishing his parental claim, **or** if Father has refused or failed to perform parental duties. Under either scenario, Father's offending conduct must have been continuing for a period of at least six months immediately preceding the filing of the termination petition.

With respect to the inquiry as to whether the parent refused or failed to perform parental duties, we have held:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

> Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life.'

*In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003) (citing *In re Burns*, 379 A.2d 535 (Pa. 1977)).

With respect to the timing element of the Section 2511(a)(1) analysis, we have held that "although the six-month period immediately preceding the filing of the petition is most critical to the analysis, the court must consider the whole history of the case and not mechanically apply the six-month provision." *In re I.J.*, 972 A.2d 5, 10 (Pa. Super. 2009) (citation omitted).

Our Supreme Court has recently clarified that the termination analysis necessitates consideration of the totality of the circumstances:

> [E]ven where the evidence clearly establishes a parent has failed to perform affirmative parental duties for a period in excess of six months as required by Section 2511(a)(1), the court must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination [of parental rights]. Consideration of the totality of the circumstances includes evaluation of the following: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between the parent and child, if any, including any efforts made by the parent to reestablish contact with the child; and (3) the effect that termination of parental rights would have on the child pursuant to Section 2511(b).

*In re Adoption of L.A.K.*, 265 A.3d 580, 593 (Pa. December 23, 2021) (citations and quotations omitted).

Instantly, the termination petition was filed on October 12, 2020, thus the most critical period of evaluation is the six months after March 12, 2020. On appeal, Father provides several reasons why termination under Section 2511(a)(1) was erroneous. **See** Father's Brief at 14. First, he argues that he was unable to see the Child until he took the hair follicle test, but that it was his understanding that Mother had to schedule and pay for the test before he could comply. **Id.** Second, notwithstanding Mother's obstruction, Father was still able to see the Child three times. **Id.** Third, Father has paid child support to Mother through voluntary withholdings, unemployment compensation garnishments, and federal income tax refunds. **Id.** Fourth, Father argues he has given gifts, or left gifts, for the Child on two occasions. **Id.** at 15. For these reasons, Father argues that he did not evince a settled purpose to relinquish his parental claims, nor had he abandoned the Child, nor refused to parent the Child.

In essence, Father argues that he demonstrated a sufficient attempt to fulfill his parental duties, but that Mother obstructed his ability to perform the same. The question then is whether, under the totality of the circumstances, Father "acted with reasonable firmness in refusing to yield to obstacles, or barriers, that have prevented the performance of parental duties." **See L.A.K.**, 265 A.3d at 592-93. As our Supreme Court explained in **L.A.K.**, the orphans' court has the discretion to resolve this issue:

> What constitutes a "barrier" in the context of a Section 2511(a)(1) analysis is a finding within the discretion of the trial court, and what may constitute a barrier necessarily will

vary with the circumstances of each case. In some instances, obstructive behavior by the child's custodian presents a barrier to the parent's ability to perform parental duties, which mitigates the parent's failure to maintain the parent-child relationship. *See, e.g.,* [*In re Adoption of Atencio*, 650 A.2d 1065, 1067 (Pa. 1994); *In re D.J.Y.*, 408 A.2d 1387, 1389-90 (Pa. 1979).] In other instances, trial courts have found substance abuse, mental health issues, homelessness, joblessness, criminal charges, or a confluence of some or all of these issues created barriers to the maintenance of the parent-child relationship. *See In re S.S.W.*, 125 A.3d 413, 417-18 (Pa. Super. 2015). In all instances, the trial court considered the explanation offered by the parent when deciding whether termination of parental rights was warranted.

*Id.* at 593.

Here, the orphans' court was not persuaded by Father's argument that he exercised reasonable firmness to overcome the barrier to performing his parental duties. In its Rule 1925(a) opinion, the court found:

Father did not act affirmatively with good faith interest and effort to maintain the parent child relationship. His choice to not take the [hair follicle] test was what has caused his prolonged estrangement from his son. Since Father seemed sincere in his desire to see his son, one can only conclude that he continued to avoid the hair follicle test because he knew the result would not be favorable.

Father paid child support only when it was automatically withdrawn from his unemployment compensation. Father's testimony about dropping gifts off was not credible.

[…]

Father did very little to take on any parental duties and was content just to visit with [the Child,] and avoiding the hair follicle test was more important than even that. He did little to achieve any further parental role in the past three years.

[…]

- 10 -

> Father's own testimony reveals that he would be okay if he could just "see" or "visit" with [the Child] in Mother's front yard. Such testimony is revealing about Father's lack of desire to be a true parent.

Trial Court Opinion, 8/13/21 (T.C.O.) at 7-8

In our review, we discern no abuse of discretion. The court considered the totality of the circumstances in this case, including Father's explanation for his conduct and the amount of post abandonment contact. *See L.A.K.*, *supra*. The court did not believe Father's testimony that Mother's "refusal" to pay for the hair follicle test was the reason why he failed to submit one. Rather, the court inferred that Father did not submit to a drug test, because Father knew he would test positive for illicit substances. Father admitted to using methamphetamines as recently as Summer 2020. *See* N.T. at 55.

But even if Father's allegation was correct, that Mother's refusal to schedule and pay for a drug test constituted a legitimate barrier to Father's performance of his parental duties, the orphan's court did not err when it determined that Father failed to act with reasonable firmness to overcome such a barrier.

We recognize that Father consulted an attorney several times to resolve the custody dispute, specifically the drug test confusion.[1] This is certainly a

_____

[1] Father's custody attorney testified that Father contacted the MidPenn Legal Services office in 2019, 2020, and 2021. *See* N.T. at 62. Without realizing Mother and Stepfather had filed the termination petition, Father's custody attorney filed to modify the provision of the child custody order concerning the hair follicle test. *Id.* at 65. Counsel explained that the court denied Father's modification petition, but allowed Father to present an amended petition, which resulted in a custody conference set for May 4, 2021. *Id.* at

*(Footnote Continued Next Page)*

mitigating factor. Still, three consultations in as many years does not constitute any real effort to remove the barrier preventing him from performing his parental duties.

Moreover, Father could have paid for his own drug test to demonstrate his sobriety. Perhaps it would be unreasonable to expect Father to routinely perform Mother's duties in order to stave off the termination of his parental rights, especially when the performance of said obligations could be prohibitively expensive. *See B., N.M.,* 856 A.2d 847, 856 (Pa. Super. 2004) ("[A] parent is not required to perform the impossible[.]") But not once did Father pay for his own drug testing, even when he received an extra $600 per week in unemployment compensation during the beginning of the Covid-19 pandemic. *See* N.T. at 58. Nothing prevented Father from paying for the test upfront and seeking reimbursement from Mother. Doing so would have either removed the barrier completely, or, at the very least, demonstrated his commitment to resuming his parental duties. Instead, Father testified that he was unaware that that was an option, and that he was just trying to follow the custody order. *See* N.T. at 31, 58.

The orphans' court was not satisfied by Father's explanation. In essence, the court determined that Father did not "exert himself," nor did he "refuse[]" to yield" to the obstacle in his way. *B., N.M.,* 856 A.2d at 855; *see*

_____

66. Counsel coordinated with a laboratory so that Father could collect the sample, and then the parties could work out the payment later through counsel. *Id.* at 66-67. The hair follicle test was never completed, however, because counsel became aware of the pending termination hearing and decided to wait. *Id.* at 67.

*also L.A.K.*, 265 A.3d at 592-93.  This determination does not constitute an abuse of discretion.  "Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs. *B., N.M.,* 856 A.2d at 855.

Regarding Father's post-separation contact with the Child, the orphans' court simply did not believe Father's testimony that he bought presents or cards for the Child's birthday.  Instead, the court believed the testimonies of Mother and Stepfather that he did not.  We cannot disturb this finding, because credibility determinations and resolutions of conflicting evidence are squarely within the purview of the trier-of-fact. *See M.G.*, 855 A.2d at 73-74. The court also determined that even if Father's testimony was true, that he saw the Child three times since May 2019, each of these visits lasted mere minutes. *See* T.C.O. at 10.

As to whether Father actually performed parental duties, we observe that Father's financial support of the Child indicates an effort to parent the Child.  In this case, however, the orphans' court was well within its discretion to afford this factor limited weight.  For one thing, the affirmative duty to parent the child "encompasses more than a financial obligation" because "a child needs more than a benefactor." *See B., N.M.*, 856 A.2d at 856 (citation omitted).  Second, testimony revealed that Father did not pay Child support in any real amount until he received substantial unemployment benefits during the Covid-19 pandemic; and even then, his support was automatically

deducted from his benefit.[2] **See** N.T. at 15. More importantly, the record discloses no other performance of parental duties, no acts of "love, protection, [or] guidance", and no attention to the Child's "physical and emotional" needs. **See C.M.S.**, 832 A.2d at 462.

Had the orphans' court resolved the conflicting evidence in favor of Father, or had the court believed Father's testimony over Mother's, then perhaps the record would support a contrary result. But as the record stands, this Court cannot search for contrary conclusions, and then substitute its judgment for that of the trial court. **See Interest of S.K.L.R.**, 256 A.3d at 1124. For these reasons, we conclude the court did not err or abuse its discretion when it determined that Mother and Stepfather met their burden under Section 2511(a).

We turn now to Father's second appellate issue, which concerns the second prong of the termination analysis under Section 2511(b). Section 2511(b) provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by

---

[2] Mother testified that she received $117 in child support for all of 2019. **See** N.T. at 14. Mother also testified that she received additional support in the beginning of 2020, which was apparently deducted from Father's income tax refund. **Id.** at 17.

- 14 -

the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(b).

This Court has explained that:

> [S]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.,* 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Concerning the bond, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship. *See C.M.K.*, 203 A.2d at 264 (citation omitted); *see also K.Z.S.*, 946 A.2d at 764 (holding there was no bond worth preserving where the child had been in foster care for most of the child's life, which caused the resulting bond to be too attenuated). We add, the court is not required to use expert testimony to resolve the bond analysis but may rely on the lay witnesses. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). Finally, we emphasize that "[w]hile a parent's emotional bond with her and/or her child is a major

- 15 -

aspect of the Section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted). However, a parent's own feeling of love and affection for the child does not preclude the termination of parental rights. *Z.P.*, 994 A.2d at 1121.

With these principles in mind, we turn to Father's argument. Father claims that the orphan's court should never have reached the second part of the bifurcated process and therefore abused its discretion. *See* Father's Brief at 29. In other words, Father argues that because the orphans' court should have found termination was unwarranted under Section 2511(a)(1), the court erred by considering Section 2511(b). *See id.* at 29.

Father is correct that when a court determines the grounds under Section 2511(a) have not been established, the analysis should cease, and the court should not consider the second prong under Section 2511(b). He made no separate argument that termination was improper based upon his bond with the Child. Since we determined Section 2511(a) was met, we could end our analysis here. To the extent Father preserved a substantive review of the court's determinations under Section 2511(b), we would still conclude that court's decision was proper.

The orphans' court opined that the Child has very little, if any, bond with Father. *See* T.C.O. at 10. The Child's counsel represented to the court that the Child does not remember Father. *See* N.T., at 3. Stepfather testified that

- 16 -

he began his relationship with Mother and Child in 2016, when the Child was nine months old, and that he moved in with Mother and Child by the end of that year. *Id.* at 22. The court determined that Mother and Stepfather have ensured the Child's physical, emotional, and developmental needs are met. *See* T.C.O. at 9. As mentioned above, when the record is devoid of evidence of a bond between the parent and the child, it is reasonable to infer none exists. *In re K.Z.S.*, *supra*. Such an inference is warranted in this case. Thus, the court was within its discretion when it determined that no bond was worth preserving, and that termination would best serve the Child's needs and welfare.

In sum: the orphans' court did not error or abuse its discretion when it concluded Mother and Stepfather met their burden of proof that termination of Father's rights was warranted under Section 2511(a)(1). Father has refused or failed to perform his parental duties throughout the pendency of this case, as evidenced by his refusal to utilize all available resources to maintain contact with Child, or to exert himself to maintain a place of importance in Child's life. Moreover, we discern no abuse of discretion nor error of law when the court determined termination would best serve the Child's needs and welfare, pursuant to Section 2511(b). The orphans' court made a reasonable inference, supported by the record, that no worthwhile bond between Father and the Child exists.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2022